RICHARD J. O'CONNELL, JR., Respondent, *v.* WESTINGHOUSE X-RAY COMPANY, INC., Appellant.

Second Department, December 30, 1940.

*Fred L. Gross*, for the appellant.

*Jeremiah J. Riordan* [*Thomas J. O' Neill* with him on the brief], for the respondent.

ADEL, J. This action is by a surgeon to recover damages for injuries to his fingers, the result of burns sustained while he was performing operations on patients under the beam projected by an X-ray machine manufactured by the defendant. Plaintiff has recovered a substantial verdict.

The plaintiff, an experienced surgeon, on two occasions performed operations on patients (the setting of fractures) under the beam of X-rays projected by a machine manufactured by the defendant. At the times in question the machine was being used for fluoroscopy, which is a technique whereby, for the purposes here concerned, X-rays are projected into the human body, the resulting shadows cast by the bones of the body are reflected upon a fluorescent screen, and the shadows can be seen during the continuance of the setting of fractures in the bones. The machine in this case was a portable, dual-purpose machine which could be used in the main for two functions: radiography, which is the taking of pictures, and fluoroscopy, to which I have already referred. The machine had been donated to a division of a hospital where the plaintiff was an attending surgeon.

Prior to performing the operations in question the plaintiff, according to his own testimony, had never seen similar operations performed by a competent surgeon under a machine of this type; he did not know that distance from the machine was a factor in determining the intensity of the rays that would fall upon the body. It never occurred to him that the nearer the fingers or the body were to the source of the X-ray beam, the greater would be the danger to the part exposed. At the times in question the machine was operated electrically by two internes. Plaintiff had been told by his superior that the two internes had been trained in the operation of the machine by defendant's expert. Before undertaking the operations under the beam of the machine, plaintiff did not inquire of the internes as to their knowledge of and ability to control the machine, nor attempt to direct them therein. It develops that the internes had been present at a demonstration of the machine by the defendant's representative for a period of an hour or so, and that they knew little or nothing about X-ray work such as might be gained from adequate other training. They, too, did not know that distance was a factor. The plaintiff testified that he took no precautions for his own safety, but nevertheless exposed his hands to the beam of the X-ray machine. He stated that his reason therefor was that he did not know that the intensity of exposure

was dependent upon the distance the body is placed from the source of the beam. It is undisputed, and is the testimony of every expert in the case, that not only is distance of the human body from the machine an important factor in determining the result produced on the body, but that the degree of effect varies inversely with the square of the distance. We are of opinion that it must be held that a surgeon who attempts to perform an operation under the beam of an X-ray machine, to which his hands are exposed, without any more knowledge than is professed, and under the circumstances shown above, is so heedless of his own safety as to bar his recovering from the manufacturer of the machine for injuries resulting from exposure to the beam.

It may be doubted that the truth is that plaintiff, a surgeon who had some experience with X-ray works, was ignorant of the fact that the nearer the hand is placed to the source of the X-ray beam, the greater the intensity of the beam falling upon the hand. But that is plaintiff's own claim, and it cannot be disregarded. If the purpose of the testimony is to lay the basis for a legal contention that a surgeon who works on bones under a fluoroscopic machine is not charged in law with knowledge of the factors determining intensity of effect upon the body, and that the surgeon is entitled to rest upon the same degree of ignorance as a layman, then it must be held that even a layman who attempts to set a fracture under a fluoroscopic machine without knowledge that intensity varies with distance is chargeable with contributory negligence as a matter of law. The evidence in plaintiff's case not only fails to establish his freedom from negligence, but establishes affirmatively as a matter of law that he was heedless of his own safety.

On the ground of the affirmative showing of the existence of contributory negligence, the judgment should be reversed on the law and the complaint dismissed. However, in connection with the other issues raised on the appeal, the evidence has been so extensive and the contentions so exhaustive that further comment is justified. It is argued that evidence of the negligence of the defendant manufacturer of the machine could be found on several grounds. After the machine had been delivered to the hospital it was demonstrated briefly by defendant's representative to an assemblage of doctors, internes, and the donor. Plaintiff was not present at the demonstration. The machine was turned on by the defendant's representative, and several of the persons present were permitted to look for a short time into the chest of a small boy patient. The plaintiff claims various specifications of defendant's negligence, as follows: The defendant's representative stated at that demonstration that about four or five milliamperes of current were proper for fluoroscopy, but when he turned on the machine the meters showed that

the current could not be reduced below seven, eight or nine milliamperes; but the defendant's representative stated nevertheless that it was proper to do fluoroscopy at that higher current, and proceeded to do so on the chest of the small boy patient. The defendant's representative is also said to have stated at that demonstration that a device which is in fact a filter was only a dust cap to be used when the machine is not in operation. Further, it is stated that the filter did not fit the machine. Lastly, it is claimed that a guard should have been put on the machine before it was delivered, such a guard as would prevent parts of the human body from getting too close to the source of the X-ray beam.

It is doubtful whether the failure to furnish a guard was a fact sufficient to raise an issue of negligence. The failure to furnish a guard was not because of carelessness, but was intentional. No guard was ordered or paid for by the purchaser of the machine, who was anxious to keep down the purchase price; a guard was not in general use on portable machines, nor on this type of portable machine; and under all the circumstances there would seem to have been no breach of duty in the failure to furnish one.

As to the claim that the current on the machine could not be reduced below seven, eight or nine milliamperes, we are of opinion that it would be against the weight of the evidence to find that that was a fact of any materiality, by reason of the undisputed evidence that current at that milliamperage could be compensated for by the reduction of voltage by the operator of the machine; but even if it be true, the defect was open and obvious to any one who attempted to use the machine. We are of the opinion that it would be against the weight of the evidence to find that the filter did not properly fit the machine. The defendant's representative at the time he demonstrated the machine is alleged to have negligently stated that the machine could be used for fluoroscopy without a filter and with the current at seven, eight or nine milliamperes. If the statements were made — and that they were may be implicit in the verdict — the uncontradicted proof establishes the truth thereof.

In summary, on the issues of defendant's negligence, it is plaintiff's theory that at the times plaintiff sustained his injuries, the machine was operated exactly as the internes had seen it operated at the demonstration given by defendant's representative some nine or ten days previously, and yet plaintiff was injured. This contention is defeated by the evidence in plaintiff's case. It is undisputed (1) that defendant's representative performed a fluoroscopy at a distance of fourteen inches; (2) that the part of the body observed at that time was the chest of a small boy; and (3) that the

fluoroscopy lasted but several seconds. This demonstration, under plaintiff's theory, was performed with the current at a maximum of nine milliamperes, and without the use of a filter. These last two elements are the only similarities in conditions between the demonstration and the subsequent use of the machine at the operations. It is undisputed that defendant's representative did not undertake to instruct the doctors on the technique of using the machine for fluoroscopic operations with regard to distance and time of exposure. Nor is it reasonable to expect that medical men should rely on a manufacturer's demonstration for training in the medical, as distinguished from the mechanical, technique. Because the factors of strength of the current, absence or presence of filter, time, and distance of exposure, are so corelated that the variation of any one of these factors results in a different effect upon the body within the field of the beam, it is impossible to say that the proximate cause of the injuries was the result of the variation of one or more of these factors, particularly where all such factors were under the control of some one other than the defendant-manufacturer, and the effect of any factor might have been changed by the alteration of any one of the other factors.

We do not hold that under no view of the evidence was it insufficient at least to raise an issue of negligence on defendant's part, but a holding to that effect is against the weight of the evidence. Accepting all the evidence presented favorable to plaintiff as true, he may not recover because such proof establishes that he was guilty of contributory negligence as a matter of law. Furthermore, the improper remarks and conduct of plaintiff's counsel during the course of the trial and his unfair arguments continued at length in summation to the jury were prejudicial to the defendant's case; and there was error in admitting evidence as to the condition of the machine at a time more than two months after plaintiff sustained his injuries.

The judgment should be reversed on the law and the facts, with costs, and the complaint dismissed on the law, with costs. The appeal from the order denying defendant's motion to set aside the verdict and for a new trial should be dismissed, without costs.

LAZANSKY, P. J., HAGARTY, CARSWELL and TAYLOR, JJ., concur.

Judgment reversed on the law and the facts, with costs, and the complaint dismissed on the law, with costs. Appeal from order denying defendant's motion to set aside the verdict and for a new trial dismissed, without costs.